Wo Kee & Co. *v.* United States (No. 3633)[1]

United States Court of Customs and Patent Appeals, January 22, 1934

*Lawrence A. Harper* for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument December 6, 1933, by Mr. Folks; submitted on brief by appellant]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling the protest of appellant herein.

---

[1] T. D. 46890.

The merchandise involved was imported at the port of San Francisco in 1928. It was described by the collector as "Fishing nets composed of ramie cord not finer than 11 lea," and classified and assessed with duty under the provisions of paragraphs 1004 and 1006 of the Tariff Act of 1922 at the rate of 18¼ cents per pound and 10 per centum ad valorem.

Appellant duly protested said classification and assessment with duty, claiming the merchandise to be dutiable under various paragraphs of said Tariff Act of 1922, one of which was the claim that it is dutiable under the provisions of paragraph 1021 as manufactures of vegetable fiber. Appellant relied upon this claim alone in the trial court, as it does here. The trial court overruled appellant's protest and entered judgment accordingly. From such judgment this appeal was taken.

The competing paragraphs of the Tariff Act of 1922, so far as pertinent here, read as follows:

PAR. 1004. * * * Threads, twines, and cords, composed of two or more yarns of flax, hemp, or ramie, or a mixture of any of them, twisted together, the size of the single yarn of which is not finer than eleven lea, 18¼ cents per pound * * *: *Provided*, That the duty on the foregoing threads, twines, and cords shall be not less than 30 per centum ad valorem.

PAR. 1006. Gill nettings, nets, webs, and seines, and other nets for fishing, composed wholly or in chief value of flax, hemp, or ramie, and not specially provided for, shall pay the same duty per pound as the highest rate imposed in this Act upon any of the thread, twine, or cord of which the mesh is made, and, in addition thereto, 10 per centum ad valorem.

PAR. 1021. All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, 40 per centum ad valorem.

Upon the hearing, held in San Francisco, it was stipulated that the merchandise here involved is in all material respects the same as the merchandise involved in the case of *United States* v. *Quong Sang Chong & Co., Wo Kee & Co.*, 19 C.C.P.A. (Customs) 172, T.D. 45277, and the record of the Customs Court in said case was introduced in evidence without objection. Said case will be hereinafter referred to as the former case. The only evidence introduced at the trial of the case at bar, in addition to said record, was the testimony of one Wong Hoy Wing, who also testified in the former case. In the opinion of the trial court in the former case the merchandise was described as follows:

At the hearing the importers introduced in evidence a representative sample of a complete so-called Chinese shrimp net, the part thereof marked "Exhibit 1" being the merchandise as imported, and the part marked "Exhibit 2" being the part that is attached to or united with Exhibit 1 after importation to form the complete net. The imported part (Exhibit 1) appears to be a large cylindrical piece of netting, hand-knitted, wide at the one end or mouth, where the mesh

is about 3 inches in size, which netting gradually narrows or tapers in diameter and in the size of mesh up to within about 5 feet of the end, where the diameter is about 18 inches and the mesh about one-half of one inch. From there the net continues for the remainder of its length without any change in diameter or in the size of the mesh. At said end Exhibit 2 appears to have been knitted on, consisting of a cylindrical piece of cotton netting about 8 feet long, also of the same diameter and mesh, the end being open. The complete or combined net, as shown by said Exhibits 1 and 2, is about 40 feet long, and for catching shrimp is supposed to be fastened to poles set in the ocean bed, and as the tide comes in the net is opened up like a cone and the shrimp are drawn in at the mouth, or wide end, and forced back and trapped in the narrow end, which end is closed by tying twine around it so as to hold the fish inside. The net is pulled up and the shrimp emptied out on the same tide.

The testimony of the importers, which stands uncontradicted, fairly shows that the imported merchandise can not commercially or profitably be used as shrimp nets, for the reason that the short narrow end would not sufficiently catch and hold the shrimp, and that the reason the cotton piece of netting is added to the imported piece is because, when completed shrimp nets were imported made of the ramie-fiber material, the end of the net would not last nearly so long, on account of the ramie being too brittle and breaking at the knots. Furthermore, it is shown that the imported merchandise commercially does not come within any of the designations enumerated in said paragraph 1006.

### In our opinion, rendered upon appeal of said former case, we said:

We think it fairly deducible from the testimony that the article as imported is not altogether satisfactory for commercial shrimp fishing for two reasons:

First, the smaller end or bottom part, having a diameter of about 18 inches and being some 5 feet in length, is not long enough to trap the quantity which the fisherman desires to catch.

Second. The ramie-fiber material is somewhat brittle and breaks more easily at the knots and is possibly more subject to injury by crabs than is the cotton material.

For these reasons the evidence indicates that it is the practically universal custom to add to the article, when being used by commercial shrimp fishermen, an additional or supplemental part composed of cotton threads such as is represented by Exhibit 2, and which is not a part of the importation. This added part is of the same diameter and mesh as the bottom end of the imported article.

The small end of the ramie article is open. The ends of the cotton article are likewise open, and, when the net is "set" or "spread" for fishing, the bottom end is tied so as to close it and form a trap.

### After reviewing the evidence as to the use of the merchandise, we said:

However, the evidence must be looked to as a whole and considered in its entirety. When this is done we are convinced that, while the article as imported is not thoroughly satisfactory for commercial shrimp fishing, it is nevertheless susceptible of being used for fishing and was, in fact, designed as a complete net for that purpose.

\*   \*   \*   \*   \*   \*   \*

That the article as imported is not altogether satisfactory for commercial fishing unless "pieced out" does not alter the fact that it really is a "net for fishing" and hence is such an article as is contemplated by paragraph 1006, unless, as was found by the court below, in the closing sentence quoted, *supra*, it be excluded therefrom by reason of commercial designation.

After reviewing the evidence as to commercial designation, we held that such designation had not been established, and that appellant's protest should be overruled.

The only evidence in the case at bar, in addition to the evidence in the former case, made a part of the record in this case, is the testimony of the witness Wong Hoy Wing, as hereinbefore noted. It is appellant's contention that this additional testimony establishes that the article here involved, as imported, was not designed as a net for fishing. Said additional testimony relates only to nets used for shrimp fishing, and, we think, establishes that the article is not used in the United States in a commercial way, in its imported condition, for the catching of *shrimp*, but is used for this purpose only when there is added to the article a cylindrical piece of cotton netting about 8 feet long.

We think, however, that said additional testimony does not establish that the imported article was not designed as a complete net for fishing and suitable for that purpose.

In appellant's brief, speaking of our decision in the former case, it is stated:

The court made the statement that the article as imported was susceptible of being used for fishing when it was considering the evidence then presented "as a whole" and considering it "in its entirety." The reference to susceptibility of use laid down no new principle of law. It was merely a fact to be considered as bearing upon the purpose for which the article was designed.

\* \* \* \* \* \* \*

\* \* \* To be dutiable under paragraph 1006 merchandise *as imported* must both be susceptible of being used for fishing and in fact *be designed as a complete net for that purpose.* This rule is in accordance with the decision in the *Quong Sang Chong & Co.* case, the long-established precedents of customs jurisprudence, and the dictates of common sense.

We are in accord with the foregoing statement from appellant's brief, it being understood, of course, that the observation quoted with reference to the scope of paragraph 1006 is limited to the provision thereof for "other nets for fishing." Mere susceptibility of an article for a given use cannot, under said paragraph 1006, determine the proper classification of such article, and we do not think that our opinion in said former case may be construed as so intimating. To constitute an article a net for fishing, it must be designed and suitable for such purpose, as held in said former case.

We find nothing in the additional evidence in the case at bar tending to establish that the article here in question was not designed as a complete net for fishing. It may be that, when used for catching *shrimp*, it is not, in its imported condition, suitable for that purpose, but it was not classified as a shrimp net, nor are shrimp nets *eo nomine* provided for in said Tariff Act of 1922.

Said witness Wong Hoy Wing did not pretend to be qualified with respect to nets for fishing generally, but only as to nets for catching shrimp. We may take judicial notice that nets for fishing are not limited to nets for catching shrimp, and the mere fact that a net may not be suitable for catching shrimp is no proof at all that it is not suitable for catching other kinds of fish.

Clearly the testimony of said witness, confined as it was to nets for catching shrimp, does not overcome the presumption of the correctness of the collector's classification that the articles involved are "nets for fishing."

Only one other witness testified in the trial of the former case, one Harry W. Johnson, by whom it was sought to establish that the articles here involved were excluded from the term "other nets for fishing" by commercial designation. In our opinion in the former case we held that such commercial designation had not been established, and we adhere to that ruling here. While there is some testimony of the said witness Johnson that, standing alone, might be construed as tending to establish that the articles here involved were not designed or suitable, in their imported condition, for any kind of fishing, we think that his testimony, taken as a whole, cannot properly be so construed.

Exhibit 1, offered in evidence in the former case, is representative of the article here involved.

Said witness Johnson, upon cross-examination, testified as follows:

Q. Do you sell all of the sizes used in fishing in the United States?—A. Yes.

Q. Do any of the sizes of meshes compare with the mesh of this net here, so called?—A. The variation in sizes of mesh are almost unlimited, being controlled mainly by the whims of a fisherman. One man, for instance, likes a 3-inch mesh, and another man likes a 4-inch mesh.

Q. Do any of them use a net with a mesh like this?—A. No.

Q. Do you mean to tell me that exhibit 1, if used as gill net would not catch fish of the respective sizes fitting in through those meshes?—A. It would mix up the catch.

Q. Never mind that. I ask you if it would catch fish of the respective sizes of the fish going through the nets?—A. It would certainly work after a fashion.

Q. It would work as good as any gill net on the market?—A. Yes.

We do not think that the testimony of the said Johnson can be held to overcome the presumption of correctness of the collector's classification.

Moreover it appears that the articles here involved were described in the invoice and consumption entry as "fishing nets." This is a statement against interest made by the importers. This statement was, of course, open to explanation and contradiction, *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T.D. 38374, but we do not think that the testimony in the case either explains or contradicts such statement.

Finally, Exhibit 1, as hereinbefore stated, is a sample of the articles here involved. A sample is often very potent evidence. *United States* v. *Marshall Field & Co.*, 19 C.C.P.A. (Customs) 331, T.D. 45483, and cases cited therein. We have inspected Exhibit 1 and it appears to be a net designed and suitable for fishing. The mere fact that one end of the net must be tied with twine to close it when it is used does not in itself indicate that it is not a complete net; moreover, after the eight-foot cylindrical cotton part is added after importation, this end of the net is still open, but appellant admits that it is then none the less a complete fishing net although this end must be tied before the net is placed in the water. We do not, of course, mean to be understood as holding that evidence showing that the article is not in fact what it appears to be would not be controlling; but, as we construe the testimony, it does not contradict the natural conclusion following an inspection of the sample, nor does it overcome the presumption of correctness of the collector's classification as "other nets for fishing."

For the reasons given, the judgment of the trial court is *affirmed*.